## UNITED STATES v. WEXLER et al.

(District Court, S. D. New York. March 16, 1925.)

**1. Criminal law ⬥⟹693—Question of admissibility of evidence secured by unreasonable search may be raised on trial.**

While the court has power to entertain a motion in advance of trial to suppress evidence secured through an illegal and unreasonable search and seizure, the defendant does not lose his rights by failure to make such motion; but if it appears probable on the trial that his constitutional rights have been violated, the court must consider and decide the question then presented.

**2. Criminal law ⬥⟹394—Searches and seizures ⬥⟹7—Defendant cannot complain of illegal search of premises of codefendant.**

If the premises of one defendant or conspirator have been unreasonably searched without a proper search warrant or pursuant to a defective one, and property seized, he alone will be heard to complain thereof, and the evidence, if any, so obtained is admissible against all other defendants.

Criminal prosecution by the United States against Irving Wexler, alias Waxy Gordon, impleaded with Joseph Katz, alias Harry Davis. On motion by defendant Wexler to suppress evidence. Denied.

William Hayward, U. S. Atty., of New York City (James S. Johnson, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Wahle, Gilbert & Black, of New York City (Frederick T. Burns and Charles C. Fenno, both of White Plains, N. Y., and Charles G. F. Wahle, of New York City, of counsel), for defendant Wexler.

WINSLOW, District Judge. This is a motion made by the defendant Wexler (1) that an order be made directing a collateral inquiry to determine the manner in which 197 lbs. of opium was seized; and (2) in the event that the United States concedes the truth of the allegations in the petition contained with reference to the search warrant and its issuance and execution, or if found to be true under a collateral inquiry instituted herein, then and in either of such events to suppress the evidence.

The indictment charges that the defendant Wexler unlawfully shipped as baggage by a common carrier from the city of New York to the city of Duluth two trunks containing approximately 197 pounds of opium; that the defendant Wexler was not duly registered, as required by law, nor had he paid a special tax, etc., although he was personally required to register and pay such tax. The indictment charges that Joseph Katz aided and abetted Wexler. The second count of the indictment charges Wexler and Katz with conspiracy to commit an offense against the United States, viz. by shipping as baggage from the city of New York to the city of Duluth, by means of a common carrier, two trunks containing opium; the defendants not having registered with the collector of internal revenue nor having paid the tax as required by law, etc.

It is further alleged in the conspiracy count, as a part of the conspiracy, that the defendants should deliver to the baggage room of the Pennsylvania Railroad in New York City two trunks containing opium and procure transportation from New York to Duluth, checking as baggage the said trunks containing the said opium, the trunks being claimed and taken into possession upon their arrival in Duluth by the defendant Katz. "And it was further a part of said conspiracy that the said two trunks, containing the said opium, should be first sent by the said Joseph Katz, alias Harry Davis, to the Hotel St. Louis in the city of Duluth, Minnesota, and from there to Hart's warehouse, in the said city of Duluth, Minnesota." The warehouse referred to is the warehouse where the search and seizure herein referred to were made. Among the overt acts set forth are (a) that Katz received and took possession of the opium in Duluth; (b) that Katz caused the trunks to be taken from the hotel in Duluth, and caused them to be stored in the warehouse, where they were found and seized by the Government agents.

In January, 1924, a prohibition agent in the district of Minnesota procured a search warrant on affidavits alleging that there was stored in a warehouse in Duluth a quantity of denatured alcohol which had not been marked and stamped as required by the Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). The search warrant commanded the officers to search the premises for the intoxicating liquors, etc., and, if found, to seize the same and make return within 10 days. The search warrant was executed. During the course of the search the officers found two trunks which are involved in the instant indictment. The lock of one of the trunks was broken; the other, locked. The one having the broken lock aroused the suspicion of the agent, who opened the same and found a substance which proved to be opium. Later on, the second trunk was opened, and also found to contain opium. The return of the search warrant showed the seizure of the alcohol re-

ferred to in the application for the search warrant and the two trunks containing the gum opium. This opium is that referred to in this indictment, which alleges that it was shipped from New York to Duluth by the petitioner Wexler.

Two questions are presented on this application. The first question is whether this motion is properly made at this time, or whether the question should be first raised at the trial; and, secondly, assuming the allegations of the petition to be true or ascertained to be true by a collateral inquiry, whether the opium in question should be suppressed as evidence. The petitioner contends that his rights under the Fourth Amendment of the Constitution have been invaded.

[1] There can be no doubt that the court has the power to entertain the motion at the present time, but it is not true that, unless the matter be decided now, the defendant is foreclosed from raising the question. In Gouled v. U. S., 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647, the court said: "Where, in the progress of a trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain an objection to their admission or a motion for their exclusion and to consider and decide the question as then presented, even where a motion to return the papers may have been denied before trial." The petitioner's constitutional rights, if any, can be enforced at the trial, and no technical reasons will avail in violation of such constitutional rights.

[2] This motion, however, sets forth with particularity the grounds upon which the application is based. Assuming the view most favorable to the petitioner from the record, the principles to be applied to the case are, in substance, these: (a) A defendant, whose person, house, or papers and effects have been the subject of unreasonable searches and seizures, in violation of the protection of the Fourth Amendment of the Constitution, will be heard to complain. (b) If the house or premises of a codefendant or co-conspirator are unreasonably searched without a proper search warrant, or pursuant to a defective one, and property seized, he alone whose house has been so unreasonably and illegally searched will be heard to complain thereof. The evidence, if any, so obtained is, however, admissible against all other defendants.

In the case of Lusco v. U. S. (C. C. A.) 287 F. 69, the indictment charged Lusco, together with one Ganci, with unlawfully selling narcotics. The narcotics in question were seized in Ganci's apartment without a search warrant. Both defendants were convicted. It was held that the illegal search and seizure of the property in Ganci's residence was in violation of his rights, but as to his co-defendant Lusco, even if the question had been seasonably raised, "it would be of no service to defendant [Lusco]. The protection of the fourth amendment safeguarded Ganci, but the illegal search and seizure as against Ganci cannot be availed of by Lusco." See, also, Remus v. U. S. (C. C. A.) 291 F. 501. Other cases might be cited to sustain the principle set forth, but it cannot be doubted that these cases set forth the law.

The defendants are not charged with mere possession of narcotics. Wexler is charged with unlawfully shipping the opium, and Katz with aiding and abetting. It is charged that the defendant Katz received it in Duluth and placed it in the warehouse. For the purposes of the indictment, the actual ownership, as between Katz and Wexler, is of no importance. If it be true, as averred, that Katz received it in Duluth and placed it in the warehouse, it was in his custody and possession just as much as if he had taken it to his own home under his own lock and key. Katz might possibly complain of an illegal search and seizure, but not Wexler. Wexler does not claim ownership, nor possession. Assuming, for the moment, that the search and seizure were unreasonable as against Katz, the protection of the Fourth Amendment cannot be availed of by Wexler.

Motions denied.